**In re TEXAS RANGERS BASEBALL PARTNERS, Debtor.**

**Paradigm Air Carriers, Inc. et al., Plaintiffs/Counter–Defendants,**

**v.**

**Texas Rangers Baseball Partners, Defendant/Counter–Plaintiff.**

**Texas Rangers Baseball Partners, Third–Party Plaintiff,**

**v.**

**HSG Sports Group LLC, Third–Party Defendant.**

**Bankruptcy No. 10–43400–DML–11. Adversary No. 11–4017–sgj.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

July 10, 2013.

Joseph J. Wielebinski, Munsch Hardt Kopf & Harr, P.C., Dallas, TX, for Defen-

dant/Counter–Plaintiff, Texas Rangers Baseball Partners.

William S. Snyder, Sayles Werbner, P.C., Jeffrey R. Fine, Dykema Gossett PLLC, Dallas, TX, for Paradigm Air Carriers, Inc. d/b/a Paradigm Air Operators, Inc. and Sportsjet Air Operators, LLC.

John Gaither, Neligan Foley LLP, Dallas, TX, for HSG Sports Group LLC.

*MEMORANDUM OPINION AND ORDER: (1) DENYING PARADIGM'S MOTION FOR SUMMARY JUDGMENT AND GRANTING TRBP'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT 1 OF THE AMENDED COMPLAINT; (2) GRANTING PARADIGM'S MOTION FOR SUMMARY JUDGMENT AND DENYING TRBP'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT 2 OF THE AMENDED COMPLAINT; AND (3) DENYING PARADIGM'S AND HSG'S MOTION TO DISMISS TRBP'S THIRD PARTY COMPLAINT AGAINST HSG AND COUNTERCLAIM AGAINST PARADIGM*

STACEY G. JERNIGAN, Bankruptcy Judge.

## I. INTRODUCTION

The above-referenced adversary proceeding (the "Adversary Proceeding") has arisen in the much-followed Chapter 11 bankruptcy case, filed May 24, 2010, by the Texas Rangers Baseball Partners ("TRBP" or the "Former Debtor" or the "Defendant").[1] The Adversary Proceeding involves a Boeing 757 aircraft that the Texas Rangers Baseball Club (the "Rangers") and the Dallas Stars Hockey Club

---

1. TRBP should probably more properly be referred to as the "Post–Effective Date Debtor" under the Fourth Amended Confirmed Plan (the "Plan") in the above-referenced bankruptcy case. Pursuant to the Plan, all remaining officers of TRBP were terminated as of the Effective Date of the Plan, and Alan M. Jacobs, an independent third party, was appointed to serve as TRBP's Plan Administrator and Disbursing Agent.

(the "Stars")—both formerly under common ownership—previously used to fly their professional sports teams to out-of-town games. In short, the new owners of the Rangers, an entity known as Rangers Baseball Express LLC ("Baseball Express"), decided near the time of the bankruptcy court's approval of its acquisition of the team out of bankruptcy, that it did not wish to utilize the 757 aircraft going forward (*i.e.,* after the 2010 baseball season). This decision apparently caught the lessor of the aircraft, Paradigm Air Carriers and SportsJet Operators (collectively, "Paradigm" or the "Plaintiffs"), by complete surprise. Paradigm thought, based on earlier communications and agreements, that the new owners of the Rangers would use the aircraft through the year 2017 baseball season. Specifically, Paradigm thought that certain agreements involving the aircraft would be assumed and assigned (in their pre-bankruptcy versions) to the new owners as part of the bankruptcy case.[2] After the dust settled, so to speak, Paradigm filed a $29.385 million proof of claim in the TRBP bankruptcy case, for its alleged damages, and also filed this Adversary Proceeding—both of which require this court to interpret certain pre-and post-petition agreements involving (a) Paradigm, (b) TRBP, and (c) HSG Sports Group, LLC ("HSG"), the latter of which is the former indirect (ultimate) owner of TRBP.[3]

Now before this court are cross motions for summary judgment filed by Paradigm and TRBP as to counts 1 and 2 of Paradigm's First Amended Complaint [DE # 11] (the "First Amended Complaint"), along with a related motion to dismiss filed by Paradigm and HSG as to TRBP's Original Third Party Complaint Against HSG and Counterclaim Against Paradigm [DE # 151] in the Adversary Proceeding.

*The Cross Motions for Summary Judgment.* Specifically, the cross motions for summary judgment concern **two breach of contract claims** that are asserted in the First Amended Complaint by Paradigm against TRBP. Specifically, Paradigm contends that the Defendant, TRBP, has breached contractual obligations under two separate agreements that allegedly, collectively required TRBP to pay certain aircraft charter payments to Paradigm **through the year 2017:**

(1) *Agreement # 1:* a 2007 Aircraft Charter Agreement (the "2007 Charter Agreement" or "Agreement # 1") **between Paradigm and HSG;** and

(2) *Agreement # 2:* a Shared Charter Services Agreement ("SCSA" or "Agreement # 2") **executed by HSG and TRBP** on May 23, 2010 (**the night before TRBP filed for bankruptcy**).

Whether or not TRBP has breached contractual obligations it may have to Paradigm through year 2017 turns not only upon this court's interpretation of these two agreements, but also on the validity of yet a third document: a First Amendment to the SCSA, dated August 12, 2010 (the "Amendment to the SCSA" or the "Amendment" or "Agreement # 3")— which third document purported to terminate, **at the close of the 2010 baseball season,** any obligation that TRBP might have had to pay aircraft charter payments to Paradigm through year 2017. Notably, the date of this third document (August 12, 2010) was one week **after** the bankruptcy court confirmed a plan of reorganization and sale of TRBP to the new owners, and was also the "Effective Date" of the confirmed plan.

Specifically, with regard to the cross motions for summary judgment the court refers to:

---

**2.** 11 U.S.C. § 365.

**3.** HSG is an entity affiliated with Mr. Tom Hicks.

(1) Paradigm's Motion for Partial Summary Judgment and Brief in Support [DE ## 17 & 18] (collectively, "Paradigm's MSJ");

(2) TRBPs' Response in Opposition to Paradigm Air Carriers and SportsJet Air Operators' Motion for Partial Summary Judgment and Brief in Support [DE ## 34 & 35];

(3) Reply Brief in Support of Plaintiffs' Motion for Partial Summary Judgment and the Notice of Supplemental Authority [DE ## 41 & 43];

(4) TRBP's Motion to Dismiss [4] First Amended Complaint or, Alternatively, for Summary Judgment and Brief in Support [DE # # 14 & 15] (collectively, "TRBP's MSJ");

(5) Paradigm's Response to Defendant's Motion to Dismiss First Amended Complaint or, Alternatively, for Summary Judgment and Brief in Support [DE ## 37 & 38]; and

(6) Reply in Support of Motion to Dismiss First Amended Complaint or, Alternatively, for Summary Judgment [DE # 40].[5]

The court also refers to the following Appendices (all filed under seal) submitted by Paradigm and TRBP relating to the cross motions for summary judgment:

(1) Plaintiff's Appendix in Support of Their Motion for Partial Summary Judgment [DE # 30] ("Plaintiffs' Appendix");

(2) Plaintiffs' Supplemental Appendix in Support of Their Cross Motions for Summary Judgment and Response to Rangers Baseball Express LLC's Motion to Dismiss [DE # 144] (Plaintiffs' "Supplemental Appendix");

(3) Defendant's Appendix in Support of Its Motion to Dismiss First Amended Complaint or, Alternatively, for Summary Judgment [DE # 32] ("Defendant's Appendix"); and

(4) Defendant's Supplemental Appendix in Support of Its Motion to Dismiss First Amended Complaint or, Alternatively, for Summary Judgment and Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment [DE # 36] ("Defendant's Supplemental Appendix").

*The Motion to Dismiss the Avoidance Complaint.* TRBP (as a form of alternative relief) has separately filed a third-

---

**4.** The court will not address TRBP's *dismissal* arguments under Rule 12(b)(6), as opposed to its *summary judgment* arguments under Bankruptcy Rule 7056, mostly because the parties have made Counts 1 (Breach of the 2007 Charter Agreement) and 2 (Breach of the SCSA) the subject of their respective *summary judgment motions;* moreover, the court concludes that Counts 1 and 2 are not subject to any legitimate dismissal arguments under Rule 12(b)(6).

**5.** With regard to the cross motions for summary judgment, the court has also considered the following correspondences with the court and supplemental briefing: (1) Letter from Judge Michael Lynn and Response from Paradigm [DE # # 46 & 49]; (2) Plaintiffs' Supplemental Brief in Support of Their Motion for Partial Summary Judgment [DE # 62]; (3) Defendant's Response to Plaintiffs' Supple-

mental Brief in Support of Their Motion for Partial Summary Judgment [DE # 75]; (4) Defendant's Supplemental Brief in Response to Court's Request of May 16, 2011 for Supplemental Briefing [DE # 63]; (5) Plaintiffs' Response in Opposition to Defendant's Supplemental Brief in Response to Court's Request of May 16, 2011 for Supplemental Briefing [DE # 73]; (6) TRBP's Written Submission Clarifying Issues Pursuant to the Court's April 19, 2012 Order [DE # 156]; (7) Plaintiffs' Supplemental Brief Supporting Their Motion for Partial Summary Judgment and Opposing Defendant's Motion for Partial Summary Judgment [DE # 157]; and (8) TRBP's Reply to Pages 28–34 of the Plaintiffs' Supplemental Brief Supporting Their Motion for Partial Summary Judgment and Opposing Defendant's Motion for Partial Summary Judgment [DE # 182].

party complaint against HSG and a counterclaim against Paradigm (the "Avoidance Complaint") in order to potentially *avoid as a fraudulent transfer* Agreement # 2 (again, Agreement # 2 was the agreement that may have obligated TRBP to pay aircraft charter payments to Paradigm through year 2017, and was *executed the day before TRBP filed bankruptcy* ). Specifically, should this court determine that Agreement # 3 was invalid, unenforceable, or otherwise nonbinding on Paradigm, TRBP filed the Avoidance Complaint to avoid Agreement # 2 as a fraudulent transfer.[6] Paradigm and HSG have each sought to dismiss the Avoidance Complaint, pursuant to FED. R.CIV.P. 12(b)(6), as incorporated by FED. R. BANKR.P. 7012, on the grounds that: (a) TRBP lacks constitutional standing to pursue any type of avoidance action, since TRBP paid unsecured creditors in full under its confirmed chapter 11 plan, and there would be no benefit to the estate to permit avoidance of Agreement # 2; and (b) TRBP's Counterclaim fails to adequately allege all of the elements required for a claim of "actual fraud" under 11 U.S.C. § 548(a)(1)(A) or to plead fraud with particularity as required under FED. R. CIV. P. 9(b) as incorporated by FED. R. BANKR.P. 7009.

With regard to the motion to dismiss, the court refers to:

(1) Plaintiffs' Motion to Dismiss and Brief in Support [DE ## 160 & 161] along with HSG's Motion to Dismiss and Joinder [DE # 173] (collectively, the "Motion to Dismiss");

(2) TRBP's Response to Paradigm's Motion to Dismiss [DE # 175];

(3) Paradigm's Reply in Support of Motion to Dismiss [DE # 184]; and

(4) TRBP's Response to HSG's Motion to Dismiss and Joinder [DE 183].

For the reasons articulated below, the court is: (1) denying Paradigm's MSJ and granting TRBP's MSJ as to Count 1; (2) granting Paradigm's MSJ and denying TRBP's MSJ as to Count 2; and (3) Denying the Motion to Dismiss as to the Avoidance Complaint.

## II. JURISDICTION

Bankruptcy subject matter jurisdiction exists in this Adversary Proceeding, pursuant to 28 U.S.C. § 1334(b). This bankruptcy court has authority to exercise bankruptcy subject matter jurisdiction, pursuant to 28 U.S.C. § 157(a) & (c) and the Standing Order of Reference of Bankruptcy Cases and Proceedings (Misc. Rule No. 33), for the Northern District of Texas, dated August 3, 1984. This is a core proceeding in which this court has statutory authority to issue final judgments, pursuant to at least 28 U.S.C. § 157(b)(2)(B), (C) and (H). However, in the event this bankruptcy court is found to lack Constitutional authority to issue this Memorandum Opinion and Order, this court submits this as a proposed ruling to the District Court.

Venue is proper in this district, pursuant to 28 U.S.C. § 1409(a), as TRBP's chapter 11 case was filed in this district.

## III. THE CROSS MOTIONS FOR SUMMARY JUDGMENT

### A. Undisputed Facts[7]

### 1. Paradigm, TRBP, and the Dallas Stars Execute the Aircraft Charter Agreements in 2003.

In 2003, Paradigm first began providing air charter services to the Rangers and the

---

**6.** Thus, the court need only consider TRBP's Avoidance Complaint to the extent it denies TRBP's MSJ as to Count 1 or Count 2 of the Amended Complaint.

**7.** The court will refer to: (1) Plaintiffs' Appendix as "Plaintiffs' App. at ___"; (2) Plaintiffs Supplemental Appendix as "Plaintiffs' Supp. App. at ___"; (3) Defendant's Appendix as

Stars, originally under separate written contracts with each team (the "2003 Agreements").[8] TRBP executed an agreement for the Rangers' charter services and Dallas Stars, LP executed an agreement for the Stars' charter services.[9] Paradigm communicated with, invoiced, and was paid directly by TRBP and Dallas Stars, LP under those two separate agreements.[10]

### 2. The 2007 Aircraft Charter Agreement: Agreement # 1

In year 2007, a new arrangement was made. Specifically, in order to resolve scheduling conflicts and avoid potential double payment for the two teams' usage of charter services during the same months, TRBP and Dallas Stars, LP asked that Paradigm essentially consolidate things and enter into one contract *with their common ultimate parent company, HSG.*[11] Consequently, *HSG and Paradigm* entered into the 2007 Charter Agreement on June 21, 2007 (the "2007 Charter Agreement" or "Agreement # 1").[12] In the 2007 Charter Agreement, Paradigm agreed to fly both the Rangers and Stars to away games in a Boeing 757 (the "Aircraft").[13] The term of the 2007 Charter Agreement was through year 2017.

The undisputed summary judgment evidence is that the execution of the 2007 Charter Agreement did not materially change Paradigm's relationship with TRBP and Dallas Stars, LP.[14] TRBP and Dallas Stars, LP at all times dealt and coordinated directly with Paradigm, and Paradigm continued to send invoices directly to TRBP and Dallas Stars, LP for payment.[15] Moreover, TRBP has acknowledged:

> ... since the commencement of the term of the [2007 Charter Agreement], the Rangers and Stars have had an oral agreement with HSG whereby each of the Rangers and Stars reimburse HSG for its proportionate share of the rent, operational expenses and all other costs and expenses of HSG under the [2007 Charter Agreement] based on such party's use of the Charter Services.[16]

### 3. The Execution of the SCSA: Agreement # 2

Three years later, circumstances were different. TRBP was facing bankruptcy and separation from its ultimate parent/owner, HSG, was inevitable. And, as noted above, HSG was the entity that had contractual rights to the Aircraft. On May 23, 2010, TRBP, as part of its proposed

---

"Defendant's App. at ____"; and (4) Defendant's Supplemental Appendix as "Defendant's Supp. App. at ____."

8. Plaintiffs' App. at 97 (Ireland Dec., ¶ 5).

9. Plaintiffs' App. at 102–133 (Ireland Dec., Exs. 1 and 2, 2003 Agreements).

10. Plaintiffs' App. at 97 (Ireland Dec. ¶ 5).

11. Plaintiffs' App. at 98 (Ireland Dec. ¶ 6).

12. *Id.;* Plaintiffs' App at 134–148 (Ireland Dec., Ex. 3, 2007 Charter Agreement).

13. Plaintiffs App. at 98 (Ireland Dec. ¶ 6). Interestingly, Paradigm is not the actual owner of the Aircraft. Paradigm leased the Air-

craft from Southwest SportsJet, LLC, the Aircraft's actual owner. Southwest SportsJet, LLC was, in turn, jointly owned by Jim Wikert and Hicks SportsJet, LLC, the latter of which is an entity owned by Tom Hicks. Plaintiffs' App. at 97 (Ireland Dec. ¶ 4). *Thus, while Paradigm itself is not a Tom Hicks-owned entity, there is clearly some coziness between Paradigm and HSG that does not escape the court's attention and may become more relevant at later stages of this litigation.*

14. Plaintiffs' App. at 98 (Ireland Dec. ¶ 7).

15. *Id.*

16. Plaintiffs' App. at 149 (Ireland Dec., Ex. 4, SCSA p. 1).

pre-packaged bankruptcy reorganization plan, entered into an Asset Purchase Agreement (as amended from time to time, the "APA") with Baseball Express for TRBP's sale of the Rangers and related assets to Baseball Express.[17] In order to provide for the continuity of transportation for the Rangers in connection with this contemplated sale, *HSG and TRBP* entered into a Shared Charter Services Agreement, dated as of May 23, 2010 (the "Shared Charter Services Agreement" or the "SCSA" or "Agreement # 2"), pursuant to which *HSG contractually agreed to make available to TRBP (and to Baseball Express or such other purchaser of the Rangers following TRBP's sale of the Rangers) certain of its Aircraft charter services rights* under the 2007 Charter Agreement.[18]

Prior to the SCSA's execution, however, HSG and TRBP sought Paradigm's written consent to the execution of the SCSA, as required under Section 20 of the 2007 Charter Agreement. Specifically, Section 20 of the 2007 Charter Agreement provided:

> 20. *Successors and Assigns.* This Lease shall be binding upon the parties thereto, and their respective successors and assigns and shall inure to the benefit of the parties hereto and except as otherwise provided herein, to their respective successors and assigns. The parties agree that they shall not lease, assign, transfer, pledge or hypothecate this Lease, without the prior written consent of the other party. *It is further expressly understood by both Paradigm and Hicks that Hicks shall be fully obligated to continue its performance under the terms of this Lease should either or*

both the Texas Rangers MLB team ("Rangers") or Dallas Stars NHL team ("Stars") are [sic] sold to an outside third party.[19]

To memorialize the required consent in writing, TRBP's counsel prepared a "Consent to Shared Charter Services Agreement" dated May 23, 2010 (the "Consent") to evidence the consent of Paradigm to HSG's entry into the SCSA with TRBP.[20] Prior to its execution, counsel for TRBP emailed Paradigm's president, Craig Ireland ("Mr. Ireland"), on May 20, 2010, drafts of the SCSA and the Consent.[21] On that same day, Mr. Ireland emailed TRBP's counsel with several comments:

> We have the following comments:
>
> *Consent to the Shared Charter Services Agreement*
>
> Page 1: Aircraft is Boeing 757–236 (not–346 as written)
>
> Page 2: Truth in Leasing Compliance. Only the first sentence is applicable. Reference 91.23(b)(1)(ii) as we are "operating under part ... of this chapter."
>
> *Shared Charter Services Agreement*
>
> Page 5: Term. We do not see how HSG would ever be fully released from all obligations and liabilities under the Aircraft Agreement, as the Aircraft Agreement is a full-year agreement, but an assignment to Baseball Express/New Owner would only effect ½ of the overall obligations and liabilities under the Aircraft Agreement.
>
> Page 7: Truth in Leasing Compliance. See comments above regarding FAR 125 operations. We would suggest adding "if required only" language.
>
> It is our overall understanding that HSG remains fully liable for all existing obli-

---

17. Defendant's App. at 16–133.

18. Defendant's App. at 133–144; *see also* Plaintiffs App. at 98–99 (Ireland Dec. ¶ 8).

19. Plaintiffs' App. at 140.

20. Defendant's App. at 166–184.

21. Plaintiffs' App. at 99, 201–23 (Ireland Dec. ¶ 9, Ex. 6, May 20, 2010 email from Christensen with attached drafts).

gations under the existing Aircraft Agreement through its respective termination unless otherwise released by Paradigm.[22]

Counsel for TRBP ultimately revised both the drafts of the SCSA and the drafts of the Consent to incorporate Ireland's comments.[23] Specifically, in its final form, Section 5.1 of the SCSA provided that

5.1 The term of this Agreement (the "Term") shall commence on the date listed hereof and shall terminate upon (a) if completed contemporaneously with or following the Rangers Baseball Express Sale (i) the assignment by HSG and assumption by Baseball Express (by its express written consent) of the Aircraft Agreement, provided that Paradigm has consented to such assignment and assumption, (ii) the execution of a new agreement between Baseball Express (or an affiliate thereof) and Paradigm to replace the Aircraft Agreement, provided that Paradigm has fully released HSG from all obligations and liabilities under the Aircraft Agreement, (b) by the termination of the Aircraft Agreement, or (c) termination of this Agreement by TRBP, at its sole option, by notice to HSG upon occurrence of an Event of Default (as defined in the Aircraft Agreement) by Paradigm under *Section 8(a)(ii), (iii), (iv)* or *(v)* of the Aircraft Agreement.[24]

Notably, Section 5.1 contemplated that the SCSA might terminate in various different ways (such as by an actual assignment to Baseball Express of the underlying HSG/Paradigm 2007 Aircraft Charter Agreement, or through a new agreement that might be reached between Baseball

Express and Paradigm, or by virtue of a default by Paradigm under the 2007 Aircraft Charter Agreement), but in the absence of one of these circumstances, it was contemplated that the SCSA would be co-extensive with the term of the 2007 Aircraft Charter Agreement (through year 2017).

There were several other key provisions of the SCSA which outlined the parties' respective rights and obligations. First, the SCSA contained some specific covenants with respect to HSG's obligations under the 2007 Charter Agreement, including Section 1.1, which provided that "HSG shall continue to perform its obligations and enforce its rights under the Aircraft Agreement to continue to obtain Charter Services from Paradigm for the benefit of the Rangers in accordance with the terms of the Aircraft Agreement" and "HSG shall use commercially reasonable efforts to cause Paradigm to take the following actions with respect to the insurance required to be provided by Paradigm pursuant to the Aircraft Agreement."[25] Second, section 3 of the SCSA provided that:

3.1 TRBP shall be responsible for all costs and expenses (including, but not limited to, rent) for which HSG is responsible under the Aircraft Agreement to the extent related to the Rangers' use of the Aircraft; *provided that,* TRBP will not be responsible for any of the costs and expenses that are attributable to the Stars' use of the Aircraft.

3.2 TRBP shall be responsible for paying directly to Paradigm rent in accordance with the schedule set forth in *Exhibit D* hereto ("Rent"). All payments of Rent shall be made at Para-

---

**22.** Plaintiffs' App. at 224.

**23.** Plaintiffs' App. at 149–200, 224 (SCSA, Consent, & Ex. 7, May 20, 2010 Cheng email attaching revisions to SCSA and Consent).

**24.** Plaintiffs' App. at 153 (SCSA, § 5.1).

**25.** Plaintiffs' App. at 150 (SCSA, §§ 1.1, 1.4).

digm's address as set forth on Exhibit C or at such place in the United States as Paradigm may designate through HSG in writing to the Rangers from time to time, or by wire transfer to Paradigm's designated account set forth in *Exhibit C.*[26]

Third, section 6.3 provided that:

> 6.3 *Entire Agreement.* This Agreement (including the Exhibits attached hereto) constitutes the entire agreement of the parties hereto in respect of the subject matter hereof, and supersedes all prior agreements or understandings between the parties hereto in respect of the subject matter hereof *and can be amended, supplemented or changed, and any provisions hereof can be waived, only by written instrument making specific reference to this Agreement signed by the party against whom enforcement of any such amendment, supplement, modification or waiver is sought.*[27]

Additionally, the Consent, in its final form, provided the following:

> (a) Paradigm's Consent shall in no way release HSG from any of HSG's covenants, agreements, liabilities or duties under the Aircraft Charter Agreement and any amendments thereto, including the obligation to pay all Rent as and when the same becomes due and payable under the Aircraft Charter Agreement and for the performance of all obligations of HSG thereunder. HSG shall continue to be liable for the payment of all Rent due and payable under the Aircraft Charter Agreement and for the performance of all obligations of HSG thereunder. *This Consent does not (i) create any privity between Paradigm and TRBP or (ii) constitute an agreement or approval by Paradigm to any modification or amendment of the terms of the Aircraft Charter Agreement.*
>
> (b) *The Shared Charter Services Agreement is and shall be, in all respects, subject and subordinate to the Aircraft Charter Agreement.*[28]

Once satisfied with the SCSA and the Consent, Paradigm executed the Consent on May 23, 2010, with HSG as the only other signatory.[29] After TRBP and HSG executed the SCSA, TRBP began paying Paradigm directly for charter services rendered to the Rangers (specifically for June, July, August, September, and October 2010).[30]

### 4. TRBP's Bankruptcy Case and the Confirmed Chapter 11 Plan

The day after the SCSA's and the Consent's execution (May 24, 2010), TRBP filed for Chapter 11 bankruptcy protection and proposed the aforementioned prepackaged bankruptcy plan for the bankruptcy court's approval.[31] As reflected in TRBP's Amended Disclosure Statement (the "Amended Disclosure Statement") filed in the Bankruptcy Case, the SCSA was an agreement **to be assumed and assigned to Baseball Express** (or such other purchaser of the Rangers) under the APA.[32] However, circumstances changed.

---

**26.** Plaintiffs' App. at 152 & 176–77 (SCSA, §§ 3.1, 3.2, Exhibit D).

**27.** Plaintiffs' App. at 154 (SCSA, § 6.3) (emphasis added).

**28.** Defendant's App. at 167 (Consent to SCSA) (emphasis added).

**29.** Plaintiffs' App. at 99, 182–185 (Ireland Dec. ¶ 11, Ex. 5, Consent to SCSA).

**30.** Plaintiffs' App. at 99 (Ireland Dec. ¶ 11).

**31.** *See generally In re Texas Rangers Baseball Partners*, Case No. 10–43400–DML–11(Chapter 11) (the "Bankruptcy Case").

**32.** *See* DE # 226 in the Bankruptcy Case; *see also* Defendant's App. at 133 (APA Exh. 1.1(a)(i)).

Subsequent to the court's approval of the Amended Disclosure Statement, and due to various parties challenging certain terms of the pre-petition sale negotiated between TRBP and Baseball Express, the court ultimately required an auction of TRBP's assets and entered an order approving bidding procedures for the auction (the "Bidding Procedures Order").[33] Among other things, the Bidding Procedures Order provided for bids to be submitted consistent with the terms of the APA attached thereto, *which now included a First Amendment to the APA,* dated as of July 12, 2010, which conditioned the closing of the sale on, among other things, *an amendment to the SCSA to provide for its automatic termination upon conclusion of the Rangers' 2010 MLB baseball season.*[34] Apparently, at some point in the first six weeks of TRBP's bankruptcy, Baseball Express had decided it was not interested in having access to the Aircraft long term.

The auction for the Rangers commenced on August 4, 2010, and concluded with Baseball Express emerging as the winning bidder. Consistent with the results of the auction, the APA was further amended by a Second Amendment to the APA, dated as of August 12, 2010, *which maintained the requirement that the SCSA be amended to provide for its automatic termination upon conclusion of the Rangers' 2010 MLB season.*[35]

Following the auction, TRBP filed its Fourth Amended Plan of Reorganization of Texas Rangers Baseball Partners Under Chapter 11 of the Bankruptcy Code (the "Plan").[36] On August 5, 2010, the court entered its Order Confirming the Plan of Reorganization of Texas Rangers Baseball Partners Under Chapter 11 of the Bankruptcy Code (the "Confirmation Order").[37] On August 12, 2010 (the "Effective Date"), the Plan became effective and fully enforceable. The Plan, among other things, provided that "[o]n the Effective Date, the Asset Purchase Agreement[38] shall be consummated."[39] In connection therewith, the Plan also provided for TRBP's assumption and assignment of executory contracts and unexpired leases associated with the sale:

> [A]s of the Effective Date, the Debtor [TRBP] shall be deemed to have assumed and assigned to the Purchaser [Baseball Express][40] each executory contract and unexpired lease to which it is a party, unless such contract or lease ... is an Excluded Contract.[41] The Confirmation Order shall constitute an

---

**33.** Defendant's App. at. 185–307 (Bidding Procedures Order).

**34.** See Defendant's App. at. 302–307 (Bidding Procedures Order, Exh. C—First Amendment to APA).

**35.** Defendant's App. at 123–133 (Second Amendment to APA, § 18).

**36.** Defendant's App. at 308–351 (Fourth Amended Plan).

**37.** Defendant's App. at 352–356 (Confirmation Order).

**38.** The "Asset Purchase Agreement" is defined in the Plan as "that certain Asset Purchase Agreement, dated as of May 23, 2010 and amended as of July 12, 2010, by and between TRBP and Baseball Express, as amended, restated, amended and restated or otherwise modified from time to time." *See* Defendant's App. at. 312–313 (Plan, § § 1.3 and 1.11).

**39.** Defendant's App. at. 328 (Plan, § 6.1(a)).

**40.** "Purchaser" is defined in the Plan as Baseball Express. *See* Defendant's App. at. 313, 318 (Plan, §§ 1.10 and 1.72).

**41.** "Excluded Contract" is defined in the Plan as "those contracts defined as Excluded Contracts pursuant to Section 1.1 of the Asset Purchase Agreement." See Defendant's App. at 315 (Plan, § 1.42).

order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease ... assumptions and assignments ... described above, as of the Effective Date.

...

Unless otherwise specified, each executory contract and unexpired lease shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on such schedule.

...

Any counterparty that does not object to the ... assumption and assignment of its executory contract or unexpired lease by the Debtor under the Plan, shall be deemed to have consented to such ... assumption and assignment.[42]

*The SCSA was one of the executory contracts subject to the foregoing provisions, and was not one of the "Excluded Contracts" excluded from assumption and assignment to Baseball Express.[43]*

### 5. The Post–Confirmation Execution of the Amendment to SCSA: "Agreement # 3"

As required by the APA, the Plan and the Confirmation Order, HSG and TRBP entered into a First Amendment to Shared Charter Services Agreement, post-confirmation, on August 12, 2010 (*i.e.*, Agreement # 3).[44] Pursuant to the Amendment to the SCSA, HSG limited its obligation to make Charter Services available to TRBP

(and following the closing, to Baseball Express under the APA) to the Rangers' 2010 MLB baseball season, and similarly TRBP's payment obligations were also limited. Specifically, and in pertinent part, section 1 of the Amendment to the SCSA provided for the following:

1. *Amendments.* The Agreement [*i.e.*, the SCSA] is hereby amended as follows. Notwithstanding anything in the Agreement [*i.e.*, the SCSA] to the contrary, and in particular Sections 3.2 and 5.1 thereof, (1) the Agreement [*i.e.*, the SCSA] shall terminate following the last game (and any return flight following such last game) of the Texas Rangers' 2010 MLB baseball season (including, if applicable, the final MLB post-season game in which the Texas Rangers participate in 2010), without premium or penalty payable by TRBP (or any successor or assign) and (2) only if each such payment becomes due prior to the termination of the Agreement [*i.e.*, the SCSA], TRBP (and not any successor or assign) shall make the following monthly lease payments required to be made by HSG pursuant to the [Aircraft Charter Agreement] directly to Paradigm Air Operators, Inc. (d/b/a SportsJet Air Operators, LLC) (without prorating any such payments) on the dates and in the amounts as follows: (x) the payment due September 1, 2010, in the amount of $635,000 for use of the aircraft in October 2010 (the "September Payment"), (y) the payment due October 1, 2010, in the amount of $615,000 for use of the aircraft in November 2010 (the "October Payment"), and (z) the payment due November 1, 2010, in the amount of $615,000 for use of the aircraft in December 2010 (the "December Payment"

---

42. Defendant's App. at 334–35 (Plan, § 9.1(a),(d)).

43. Defendant's App. at 27; 131 (APA, § 1.1 and Exh. 1.1(a)(i)).

44. Defendant's App. at 162–165 (the Amendment).

6). For the avoidance of doubt, TRBP, and not any successor or assignee of TRBP, shall continue to be responsible for the September Payment, October Payment and December Payment, notwithstanding any assignment by TRBP of the Agreement, as amended by this Amendment.[45]

Thereafter, on the Effective Date of the Plan, the closing under the APA took place and pursuant to the Plan, the SCSA, as amended, was deemed assumed and assigned to Baseball Express.[46]

After close of business on August 12, 2010, TRBP's counsel emailed Paradigm's President, Craig Ireland, an executed copy of the Amendment to the SCSA.[47] The email (which was sent in response to an email from Ireland requesting a digital copy of the SCSA) told him, "please note that there was a subsequent amendment to the [SCSA], which I have also attached." [48] Within minutes of receiving and reviewing the Amendment to the SCSA, Ireland informed TRBP's counsel that "Paradigm made no consent to any amendments to the existing agreement." [49] In response, TRBP's counsel told Ireland that the Amendment to the SCSA was "consistent with the bankruptcy court rulings," but would not identify which rulings he was referring to and would not explain why the Amendment to the SCSA had been drafted and executed earlier that day without Paradigm's knowledge or consent.[50]

Subsequent to these communications, TRBP made payments under the SCSA in September and October 2010.[51] The Rangers played their final game of the 2010 MLB baseball season on November 1, 2010 in Arlington, Texas.[52] Pursuant to the terms of the SCSA, as amended, the SCSA would have automatically terminated upon the conclusion of such game.[53]

### 6. Paradigm's Proof of Claim and the Adversary Proceeding

After Paradigm received notice of the Amendment to the SCSA, Paradigm retained litigation counsel, then searched for and retained bankruptcy counsel, and on August 23, 2010, timely filed Claim No. 57 (the "Proof of Claim") for TRBP's alleged contractual breaches under both the 2007 Charter Agreement and the SCSA.[54] After conducting initial discovery on the Proof of Claim, Paradigm filed its Original Complaint against TRBP on February 2, 2011, initiating the Adversary Proceeding. The Original Complaint incorporated the then-pending Proof of Claim and asserted state

45. Defendant's App. at 162 (the Amendment, § 1).

46. Defendant's App. at. 334 (Plan, § 9.1(a)); *see also* Defendant's App. at. 42 (APA, § 2.1(a)).

47. Ireland has asserted that he did not receive and had no knowledge of the provisions in the amendments to the APA, particularly those that were eventually incorporated into the Amendment to the SCSA. In fact, he did not receive a draft of the First Amendment to the APA until August 13, 2010. Plaintiffs' App. at 99–101, 275–284 (Ireland Dec. ¶¶ 12–14, Ex. 10, August 13, 2010 email from D. Artz [Redacted for Attorney–Client Privilege] ).

48. App. at 99–100, 268–274 (Ireland Dec. ¶ 12, Ex. 9, August 12, 2010 email from Ireland and responses).

49. *Id.*

50. *Id.*

51. TRBP's October 2010 payment was for access to Charter Services through the end of November 2010. See Defendant's App. at 162 (Amendment, § 1).

52. Defendant's App. at 357–368 (Report on World Series).

53. Defendant's App. at 162 (the Amendment, § 1).

54. Plaintiffs' App. at 101 (Ireland Dec. ¶ 15).

law causes of action for breach of contract and for a declaratory judgment. The adjudication of the Proof of Claim was later consolidated into this Adversary Proceeding.[55] On March 11, 2011, Paradigm filed its First Amended Complaint.[56] On March 18, 2011, Paradigm and TRBP filed the competing summary judgment motions addressed herein.[57]

Within TRBP's summary judgment briefing, TRBP argued that it could have no contractual liability to Paradigm because "the SCSA, whether or not amended, had been assumed and assigned to [Baseball] Express."[58] At an April 11, 2011 summary judgment hearing, Judge Lynn, who originally presided over this Adversary Proceeding and the Bankruptcy Case, referenced this argument and asked TRBP's counsel whether TRBP intended to join Baseball Express as a necessary party. TRBP's counsel said TRBP had no intention to do so until after the dispositive motions were decided.[59] At the hearing, Judge Lynn dismissed Paradigm's Count Three (which was an alter ego claim) and took the remaining counts under advisement.

With the dispositive motions still pending, Judge Lynn sent the parties a letter on May 16, 2011, stating his belief that Baseball Express and HSG were "necessary parties that must be joined pursuant to FED.R.CIV.P. 19(b)(1)(B) and (2)."[60] Judge Lynn then requested that Paradigm, not TRBP, "act pursuant to Rule 19 to add as parties [Baseball] Express and [HSG]."[61] The letter was also sent to counsel for Baseball Express and HSG.[62]

On May 27, 2011, Paradigm sent a letter to Judge Lynn expressing its belief that neither Baseball Express nor HSG was a "Required Party" as defined in Rule 19, respectfully declining Judge Lynn's invitation that Paradigm sue those parties, and requested an opportunity to brief the issue.[63] On June 9, 2011, Judge Lynn, acting *sua sponte*, issued an Order Respecting Joinder, holding that "neither Plaintiff nor Defendant shall be required to implead [Baseball] Express or [HSG]" under Rule 19, but permitting Baseball Express and HSG to intervene under FED. R. CIV. P. 24 prior to July 1, 2011, "if either wishe[d] to protect its rights."[64] Judge Lynn's *sua sponte* order stated that the court had authority to permit Baseball Express and HSG, as non-debtors, to intervene and assert claims against non-debtor Paradigm "pursuant to 11 U.S.C. § 105(a)."[65]

**55.** See Agreed Order Granting Motion to Consolidate [DE # 58].

**56.** *See* DE # 11.

**57.** Specifically, TRBP filed a "Motion to Dismiss First Amended Complaint or, Alternatively, for Summary Judgment and Brief in Support" [DE ## 14 & 15], and Paradigm filed a Motion for Partial Summary Judgment and Brief in Support [DE ## 17 & 18].

**58.** TRBP's Brief in Support of Motion to Dismiss First Amended Complaint or, Alternatively, For Summary Judgment [DE # 15].

**59.** See April 11, 2011 Hearing Transcript, at 29–32 [DE # 52] ("COURT: Do you think that it was your place to bring in Express if you think Express has whatever liability TRBP might have? MR. APPENZELLER: I do think that's something that, depending on the outcome of these motions, we're going to have to make a decision on.")

**60.** See May 16, 2011, Letter from Court [DE # 46]. This appears to be a typographical error since there is no Rule 19(b)(1)(B).

**61.** *Id.*

**62.** *Id.*

**63.** *See* May 27, 2011, Letter from W. Snyder to Court [DE # 49].

**64.** *See* June 9, 2011, Order Respecting Joinder [DE # 55].

**65.** *Id.*

On June 30, 2011, Baseball Express filed a Notice of Intervention and Brief Regarding the Aircraft Charter and Related Agreements.[66] Baseball Express' intervention resulted in a deluge of counterclaims, procedural motions, and multiple rounds of dispositive motions and delayed this proceeding for about a year. On May 12, 2012, following Judge Lynn's self-initiated recusal and a transfer of the Adversary Proceeding to this court, Baseball Express, TRBP and Paradigm were finally able to negotiate and submit a Stipulated Judgment Regarding Claims By and Against Rangers Baseball Express.[67] That stipulated judgment dismissed Baseball Express from this Adversary Proceeding and adjudicated that Baseball Express would not have assumed TRBP's payment obligations under an **unamended** SCSA, which are at issue here.[68]

On May 24, 2012, TRBP filed an Original Third–Party Complaint (the "Avoidance Complaint") against HSG Sports Group LLC and Counterclaim against Paradigm.[69] This third-party complaint asserts that if the Amendment to the SCSA is found to be invalid and unenforceable (arguably as part of this court resolving the cross motions for summary judgment), 11 U.S.C. § 548(a)(1)(A) would allow TRBP to avoid its obligations created on the eve of bankruptcy, under the **unamended** SCSA dated May 23, 2010.

## B. Summary Judgment Standard

Summary judgment is appropriate whenever a movant establishes that the pleadings, affidavits, and other evidence available to the court demonstrate that no genuine issue of material fact exists, and the movant is, thus, entitled to judgment as a matter of law.[70] A genuine issue of material fact is present when the evidence is such that a reasonable fact finder could return a verdict for the non-movant.[71] Material issues are those that could affect the outcome of the action.[72] The court must view all evidence in a light most favorable to the non-moving party.[73] Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[74] If the movant satisfies its burden, the non-movant must then come forward with specific evidence to show that there is a genuine issue of fact.[75] The non-movant may not merely rely on conclusory allegations or the pleadings.[76] Rather, it must demonstrate specific facts identifying a genuine issue to be tried in order to avoid summary judgment.[77] Thus, summary judgment is proper if the non-movant "fails to make a show-

---

66. *See* DE # 70.

67. *See* DE # 149.

68. *Id.*

69. *See* DE # 151.

70. FED.R.CIV.P. 56(a); *Piazza's Seafood World, LLC v. Odom,* 448 F.3d 744, 752 (5th Cir. 2006); *Lockett v. Wal–Mart Stores, Inc.,* 337 F.Supp.2d 887, 891 (E.D.Tex.2004).

71. *Piazza's Seafood World, LLC,* 448 F.3d at 752 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

72. *Wyatt v. Hunt Plywood Co., Inc.,* 297 F.3d 405, 409 (5th Cir.2002), *cert. denied,* 537 U.S. 1188, 123 S.Ct. 1254, 154 L.Ed.2d 1020 (2003).

73. *Piazza's Seafood World, LLC,* 448 F.3d at 752; *Lockett,* 337 F.Supp.2d at 891.

74. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

75. *Lockett,* 337 F.Supp.2d at 891; *see also Ashe v. Corley,* 992 F.2d 540, 543 (5th Cir. 1993).

76. *Lockett,* 337 F.Supp.2d at 891.

77. FED.R.CIV.P. 56(c)(1); *Piazza's Seafood World, LLC,* 448 F.3d at 752; *Lockett,* 337 F.Supp.2d at 891.

ing sufficient to establish the existence of an element essential to that party's case." [78]

### C. Analysis on Count 1 and Count 2 of the Amended Complaint

As currently plead, Paradigm's MSJ seeks partial summary judgment (*i.e.*, judgment on liability, not damages) on Counts One (Breach of the 2007 Charter Agreement), Two (Breach of the SCSA), and Four (Declaratory Judgment). Specifically, Count Four seeks a declaration that the Amendment to the SCSA is invalid. Because Paradigm and TRBP have agreed that the Amendment's validity is the central issue of the case and will determine how Counts One and Two are resolved, Paradigm has agreed that the court's separate consideration of Count Four (Declaratory Judgment) is simply unnecessary at this time. As such, Paradigm has withdrawn its summary judgment motion as to Count Four and will dismiss it without prejudice. Thus, the court must only determine whether summary judgment (either in favor of Paradigm or TRBP) is appropriate on Paradigm's claims for breach of the 2007 Charter Agreement and breach of the SCSA (Counts One and Two of the Amended Complaint). Moreover, as stated above, should the court grant summary judgment in favor of TRBP as to Counts One and Two, any decision as to the Motion to Dismiss TRBP's Avoidance Complaint would be mooted.

### 1. The Legal Nature of the SCSA

Before determining whether there was a breach by TRBP of the 2007 Charter Agreement or the SCSA, the court must first determine the legal nature of the SCSA, specifically whether: (1) the SCSA was an assignment of HSG's rights under the 2007 Charter Agreement; (2) the SCSA was a sublease of the 2007 Charter Agreement; or (3) the SCSA was something else entirely. Paradigm has argued that the SCSA (particularly §§ 3.1 and 3.2) made TRBP an assignee of the 2007 Charter Agreement by assigning to TRBP, HSG's payment obligations under the 2007 Charter Agreement. TRBP, on the other hand, has argued that the SCSA was a sublease, not an assignment.

 In order to determine the legal nature of the SCSA, the court's primary duty is to ascertain and give effect to the intent of the parties, as that intent is expressed in the contract.[79] An unambiguous contract is construed according to the plain meaning of its express wording.[80] The court must look "at the contract as a whole in light of the circumstances present when the contract was entered" into.[81] Terms used in the contract have their "plain, ordinary, and generally accepted meaning unless the [contract] shows that the parties used them in a technical or different sense." [82] Unambiguous contracts are enforced as written.[83]

 In *Amco Trust, Inc. v. Naylor*,[84] the Texas Supreme Court held that, when

---

**78.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**79.** *Gulf Ins. Co. v. Burns Motors, Inc.* 22 S.W.3d 417, 423 (Tex.2000); *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex.1983).

**80.** *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex.1985); *Kahn v. Seely*, 980 S.W.2d 794, 797 (Tex.App.-San Antonio 1998, pet. denied).

**81.** *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

**82.** *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996).

**83.** *Id.*

**84.** 317 S.W.2d 47, 50 (Tex.1958).

a lessee voluntarily transfers part or all of its interest under the lease to another, the transaction is accordingly treated as either an assignment or a sublease for purposes of determining the rights and liabilities of the parties involved. In order to constitute an assignment, the lessee must part with his *entire* interest in all or part of the demised premises without retaining any reversionary interest.[85] One who, thus, acquires the entire leasehold estate becomes the tenant in place of the lessee and is in privity of estate with the lessor.[86] If, on the other hand, the lessee retains any reversionary interest, no matter how small it may be, his transferee is not in privity of estate with the lessor and is regarded as a sublessee.[87] There is no privity of contract between the lessor and a sublessee, and the latter is not liable to the lessor on the covenants of the lease, unless he assumes or otherwise binds himself to perform the same.[88] Thus, the critical issue in determining whether the SCSA was an assignment or a sublease is whether HSG had a reversionary interest in the 2007 Charter Agreement after executing the SCSA with TRBP.

■ Paradigm has argued that all of the Texas case law cited by TRBP,[89] including *Amco Trust*, is irrelevant because these cases apply the sublease/assignment principles discussed above to leases of real property, not personal property, and has further implied that subleases of personal

property are not possible. Specifically, Paradigm has cited to the definition of "sublease" in Black's Law Dictionary as support for this assertion, arguing that the definition of "sublease" only contemplates a sublease involving real property. However, Black's Law Dictionary (in its current form) defines a sublease as "a lease by a lessee to a third party, conveying some or all of the leased property for a term shorter than or equal to that of the lessee, who retains a reversion in the lease."[90] Furthermore, Black's Law Dictionary defines the term "lease" as "... a contract by which the rightful possessor of *personal property* conveys the right to use that property in exchange for consideration."[91] Thus, the current definition of "sublease" in Black's Law Dictionary clearly contemplates subleases involving personal property. But interestingly, in the Fifth Edition of Black's Law Dictionary (which was cited and relied upon by Paradigm in its briefing), "sublease" was defined as a "transaction whereby tenant grants interest in leased premises less than his own, or reserves to himself reversionary interest in term."[92] Moreover, the Fifth Edition of Black's Law Dictionary defines "Premises" as "lands and tenements; an estate, including land and buildings thereon; the subject-matter of a conveyance."[93] Citing these older versions of the definitions for "sublease" and "premises," it makes sense why Paradigm has

85. *Id.*

86. *Id.*

87. *Id.*

88. *Id.*

89. *See, e.g., id.; Interstate Fire Ins. Co. v. First Tape, Inc.*, 817 S.W.2d 142, 145 (Tex.App.-Houston [1st Dist.] 1991, writ denied); *Dameron Oil Co., Inc. v. Majeed*, No. 10–01–00401–CV, 2004 WL 1211620, at *2–3 (Tex. App.-Waco Jun. 2, 2004, pet. denied).

90. Black's Law Dictionary, 1562 (9th Ed. 2009).

91. Black's Law Dictionary, 970 (9th Ed. 2009) (emphasis added).

92. Black's Law Dictionary, 1278 (5th Ed. 1979).

93. Black's Law Dictionary, 1063 (5th Ed. 1979).

argued that the SCSA could not qualify as a sublease. Nonetheless, the court finds that because the definition of "sublease," as defined in the latest edition of Black's Law Dictionary now encompasses both leases of real property as well as leases of personal property, the case law cited by TRBP in its briefing is relevant to this court's analysis of whether the SCSA was an assignment or a sublease.[94]

■ Taking into account the distinctions between an "assignment" and a "sublease," as set forth by the Texas Supreme Court in *Amco Trust*, the court must determine whether HSG was left with a reversionary interest in the 2007 Charter Agreement as a result of signing the SCSA. If HSG had a reversionary interest, the SCSA should be construed as a sublease. However, if HSG transferred its entire interest in the 2007 Charter Agreement, the court must construe the SCSA to be an assignment. Here, the court finds that the undisputed facts show that the SCSA was a sublease. Specifically, the SCSA recognizes HSG's retention of rights under the 2007 Charter Agreement by expressly requiring HSG to continue to enforce such rights as part of its contractual obligations to TRBP under the SCSA:

> HSG shall continue to perform its obligations and enforce its rights under the Aircraft [Charter] Agreement to continue to obtain Charter Services from Paradigm for the benefit of the Rangers in accordance with the terms of the Aircraft [Charter] Agreement.
>
> . . .
>
> HSG shall use commercially reasonable efforts to cause Paradigm to take the following actions with respect to the insurance required to be provided by Par-

adigm pursuant to the Aircraft [Charter] Agreement [followed by specifics] . . . [95]

Similarly, the termination clause of the SCSA acknowledged HSG's retention of rights by making it abundantly clear that HSG's (not TRBP's) potential assignment of the 2007 Charter Agreement would automatically terminate the SCSA:

> The term of this Agreement (the "Term") shall commence on the date hereof and shall terminate upon . . . the assignment by HSG and assumption by Baseball Express (by its express written consent) of the [2007 Charter Agreement] . . . [96]

Had the SCSA resulted in an assignment by HSG to TRBP of its entire interest under the 2007 Charter Agreement, this provision would have been completely unnecessary because HSG would have had no continuing ability to assign any interest in the 2007 Charter Agreement to Baseball Express. Hence, this language alone demonstrates that HSG and TRBP did not intend for the SCSA to result in an assignment of HSG's interest in the 2007 Charter Agreement to TRBP.

Finally, and perhaps most important, the unequivocal language of Paradigm's own Consent to the SCSA simply cannot be ignored: "This Consent does not . . . . create any privity between Paradigm and TRBP."[97] The hallmark of an assignment is privity between the assignee and the original lessor, and yet Paradigm executed a consent that expressly negates any such privity. Specifically, the language of Paradigm's own Consent to the SCSA provided that:

> 2. Paradigm's Consent. Paradigm hereby consents to the Shared Charter

---

94. The court acknowledges that there is sparse case law referencing subleases of personal property and, thus, this has made the parties and court resort to discussing sources like Black's Law Dictionary.

95. Plaintiffs' App. at 150 (SCSA, §§ 1.1, 1.4).

96. Plaintiffs' App. at 153 (SCSA, § 5.1).

97. Plaintiffs' App. at 183 (Consent, ¶ 2(a)).

Services Agreement and transfers or assignments contained therein ("Paradigm's Consent"), subject to the following terms and conditions:

(a) Paradigm's Consent shall in no way release HSG from any of HSG's covenants, agreements, liabilities or duties under the Aircraft Charter Agreement and any amendments thereto, including the obligation to pay all Rent as and when the same becomes due and payable under the Aircraft Charter Agreement and for the performance of all obligations of HSG thereunder. HSG shall continue to be liable for the payment of all Rent due and payable under the Aircraft Charter Agreement and for the performance of all obligations of HSG thereunder. **This Consent does not (i) create any privity between Paradigm and TRBP or (ii) constitute an agreement or approval by Paradigm to any modification or amendment of the terms of the Aircraft Charter Agreement.**

**(b) The Shared Charter Services Agreement is and shall be, in all respects, subject and subordinate to the Aircraft Charter Agreement.**[98]

While Paradigm has argued that the above language was only referring to the Consent, alone, and not the SCSA, the court cannot agree based upon the introductory phrase to section 2 which provides that "Paradigm hereby consents to the Shared Charter Services Agreement and transfers or assignments contained therein." Thus, by substituting the meaning of the defined term from the introductory phrase of section 2 of the Consent into the applicable no-privity subparagraph, Paradigm expressly negated the creation of any privity with TRBP on account of the execution of the SCSA.

For all these reasons, the court finds that the SCSA should be treated as a sublease, not an assignment.[99]

### 2. Count 1: Breach of the 2007 Charter Agreement

■■■ In count 1 of the Amended Complaint, Paradigm alleges that TRBP breached the 2007 Charter Agreement. Here, it is undisputed that TRBP was not a signatory to the 2007 Charter Agreement. In order for Paradigm to prevail on Count 1, Paradigm must prove: (a) the existence of a valid, enforceable contract; (b) the plaintiff is a proper party to sue for breach; (c) the non-breaching party performed; (d) the defendant breached the contract; and (e) the defendant's breach caused the damages sought.[100] With regard to the first element, Texas law is clear that in general *"privity of contract is an essential element of recovery."*[101] In order to maintain an action to recover damages flowing from the breach of a written agreement, there must ordinarily be a privity existing between the party damaged (here, allegedly Paradigm) and the party sought to be held liable for the repudiation of the agreement (here, TRBP).[102]

---

**98.** *Id.* (emphasis added).

**99.** For the avoidance of doubt, the court finds that the 2007 Charter Agreement is also a sublease (so, technically, the SCSA is a sub-sublease). Although the 2007 Charter Agreement is titled "Aircraft Charter Agreement" and Paradigm has argued that 2007 Charter Agreement is more in the nature of a services agreement, paragraph 1 of the 2007 Charter Agreement (Plaintiff's App. at 134) clearly demonstrates that the 2007 Charter Agreement is for a "lease" of the Aircraft, and the

court finds this to be the substance of the agreement.

**100.** *City of The Colony v. N. Tex. Mun. Water Dist.,* 272 S.W.3d 699, 739 (Tex.App.-Fort Worth 2008, pet. dism'd).

**101.** *Boy Scouts of Am. v. Responsive Terminal Sys., Inc.,* 790 S.W.2d 738, 747 (Tex.App.-Dallas 1990, writ denied) (emphasis added).

**102.** *Id.* However, "a well-defined exception to the general rule thus stated is that one who is not privy to the written agreement may dem-

 As stated above, TRBP was not a party to the 2007 Charter Services Agreement; *the agreement was between Paradigm and HSG only.* Thus, the only way Paradigm could have a viable claim against TRBP for breach of the 2007 Charter Services Agreement is if the SCSA had the legal effect of creating an assignment of the 2007 Charter Services Agreement to TRBP (thus, creating privity between Paradigm and TRBP). Based on the court's analysis above, the court has determined that the SCSA was in the nature of a sublease—not an assignment—and, thus, there was no privity of contract created between Paradigm and TRBP. As earlier mentioned, the plain unambiguous language of the Consent, which was signed by Paradigm, makes clear that the parties never intended for the SCSA to create any type of privity between Paradigm and TRBP. Because no privity existed between TRBP and Paradigm, no relief is available to Paradigm against TRBP for breach of the 2007 Charter Agreement, and the court must grant TRBP's MSJ as to Count 1 of the Amended Complaint and deny Paradigm's MSJ as to Count 1 of the Amended Complaint. Moreover, because Paradigm cannot assert breaches of the 2007 Charter Agreement against TRBP, the court need not determine, at least as to Count 1 of the Amended Complaint, whether the Amendment to the SCSA was valid and/or whether its execution was a breach of the 2007 Charter Agreement.

### 3. Count 2: Breach of the SCSA

As noted earlier, the SCSA was an agreement between HSG and TRBP. Paradigm was not a party to it (although Paradigm signed a Consent as to it). Nevertheless, in Count 2 of the Amended Complaint, Paradigm has asserted that TRBP and HSG *intended to secure a benefit for Paradigm* when they entered into the SCSA, and that, accordingly, Paradigm is *a third-party beneficiary* of SCSA, fully vested with rights to enforce the terms of the SCSA against TRBP under Texas law. With such standing, Paradigm has asserted a claim against TRBP for TRBP's breaches or anticipatory breaches of the SCSA, including but not limited to TRBP's refusal to pay Paradigm for rent, costs, and expenses owed during the Major League Baseball season in each year through 2017,[103] and its attempt to modify, assign (or reassign), and/or terminate its obligations to make those payments without Paradigm's written consent via TRBP's execution of the Amendment to the SCSA, which is invalid and unenforceable under Texas law.

#### a) Was Paradigm a Third–Party Beneficiary of the SCSA?

 The court must first determine whether Paradigm was a third-party beneficiary of the SCSA. In order for Paradigm to qualify as a third-party beneficiary of the SCSA under Texas law, the terms of the SCSA must show that TRBP and HSG: (1) intended to secure a benefit for Paradigm, and (2) entered into the agreement directly for Paradigm's benefit.[104]

onstrate satisfactorily that the contract was actually made for his benefit and that the contracting parties intended that he benefit by it so that he becomes a third-party beneficiary and eligible to bring an action on such agreement." *Id.* Paradigm has argued that it was a third-party beneficiary of the SCSA, so this third-party beneficiary doctrine will be discussed further below. However, the third-party beneficiary doctrine has no relevance with regard to the 2007 Charter Agreement, since Paradigm—the party claiming breach— was itself a party to the 2007 Charter Agree-

ment and need not prove itself to be a third-party beneficiary.

**103.** There is no dispute that TRBP has not paid Paradigm under the SCSA since October 2010. Plaintiffs' App. at 99, 482 (Ireland Dec. ¶ 11, Nicholson Dec., Ex. E., January 14, 2011, TRBP Response to Paradigm Request for Admission No. 23).

**104.** *Stine v. Stewart,* 80 S.W.3d 586, 589 (Tex. 2002); *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.,* 995 S.W.2d 647, 651 (Tex.1999);

When determining whether Paradigm is a third-party beneficiary, it is appropriate to examine the entire contract and give effect to all its provisions so that none are rendered meaningless.[105] A third-party beneficiary does not have to show that the signatories executed the contract *solely* to benefit the non-contracting party, but rather, the focus is on whether the contracting parties intended, *at least in part,* to discharge an obligation owed to a third party.[106] There is a legal presumption that parties contract only for themselves and not for the benefit of third parties.[107] Moreover, according to the Texas Supreme Court, a party proves itself to be a third-party beneficiary if the performance of the contract will satisfy "a legal duty owed to [it]," which "may be an 'indebtedness, contractual obligation or other legally enforceable commitment' owed to the third party."[108] Thus, Paradigm need not show that TRBP and HSG executed the SCSA solely to benefit Paradigm; rather, the focus is on whether they intended, at least in part, to discharge an obligation owed to Paradigm.[109] Finally, any references to Paradigm in the SCSA, though not dispositive, provide further evidence that it was an intended third-party beneficiary.[110]

▪ Here, the court finds that the undisputed facts show that Paradigm was a third-party beneficiary of the SCSA. While

HSG and TRBP, in executing the SCSA, may have primarily been focused on the fact that HSG would no longer be the ultimate, indirect owner of the Rangers, and the new owner of the Rangers should have some written contractual arrangements governing its rights and obligations with regard to the Aircraft, the fact is that the SCSA spelled out that TRBP and its successor would have both a right to use the Aircraft and an obligation to pay Paradigm in specified amounts. The facts here resemble those considered by the Texas Supreme Court in *Stine v. Stewart,* which the Texas Supreme Court reaffirmed in *Tawes v. Barnes.*[111] In *Stine,* the Texas Supreme Court determined that an agreement settling a divorce by, among other things, requiring the husband to pay a specific amount of money under a detailed plan to a person named in the agreement, his mother-in-law, Ms. Stine, conferred a direct benefit on Ms. Stine, made her the agreement's third-party beneficiary, and allowed her to sue her former son-in-law for defaulting on his payment obligations.[112] When discussing *Stine* in the *Tawes* decision, the Texas Supreme Court noted that an agreement "contain[s] the requisite clear and unequivocal language of intent to directly benefit a third party"

Doe v. Tex. Ass'n of Sch. Bds., Inc., 283 S.W.3d 451, 460 (Tex.App.-Fort Worth 2009, pet. denied).

105. *Stine,* 80 S.W.3d at 589; *MCI,* 995 S.W.2d at 652.

106. *Id.* at 651.

107. *Id.*

108. *Id.* Such beneficiaries are referred to as "creditor beneficiaries." *See S. Tex. Water Auth. v. Lomas,* 223 S.W.3d 304, 306 (Tex. 2007); *Stine v. Stewart,* 80 S.W.3d 586, 589 (Tex.2002); *Doe,* 283 S.W.3d at 460; *In re Bayer Materialscience, LLC,* 265 S.W.3d 452,

456–57 (Tex.App.-Houston [1st Dist.] 2007, no pet.).

109. *Stine,* 80 S.W.3d at 591–92.

110. *Union Pacific R.R. Co. v. Novus Int'l, Inc.,* 113 S.W.3d 418, 423 (Tex.App.-Houston [1st Dist.] 2003, pet. denied).

111. 340 S.W.3d 419, 426–28 (Tex.2011) (comparing *Stine* and finding no third-party beneficiary status because relevant agreement did not "identify a specific sum which the parties ... must pay to a certain [third] person or entity.").

112. *Stine,* 80 S.W.3d at 590–591.

when, for example, it provides for the payment "of a specific amount of money" to an identified recipient.[113] In light of the criteria promulgated by the Texas Supreme Court in *Tawes* and *Stine*, the court finds that the SCSA clearly and fully expressed TRBP's and HSG's intent to secure a benefit for Paradigm and to discharge their obligations to pay Paradigm for the charter services Paradigm would render through 2017. To clarify and discharge those payment obligations, the SCSA, which references Paradigm repeatedly in the SCSA, made TRBP responsible for paying Paradigm *directly* for all costs and expenses for which HSG was responsible under the 2007 Charter Agreement and even attached a schedule for such payments as an exhibit to the SCSA (showing the exact payments to be made).[114] The SCSA conferred a direct benefit on Paradigm because it promised TRBP's performance in satisfaction of contractual obligations HSG owed to Paradigm under the 2007 Charter Agreement, particularly the payment of monthly rent and other expenses as set forth in Exhibit D to the SCSA.

### b) Did TRBP Breach the SCSA?

Having found that Paradigm is a third-party beneficiary of the SCSA, the court must next determine whether TRBP breached, or anticipatorily breached, the SCSA by its attempt to modify, assign (or reassign), and/or terminate its obligations to make payments under the SCSA to Paradigm for rent, costs, and expenses owed during the Major League Baseball season in each year through 2017, via execution of the Amendment to the SCSA without Paradigm's written consent. If not, the Amendment to the SCSA would be deemed valid and TRBP's obligation to pay Paradigm for charter services beyond the end of the 2010 season would have been extinguished. In other words, HSG would be "on the hook" for breaches of the SCSA after 2010, but not TRBP.

▮▮▮▮▮▮ "It is settled in Texas that after a contract for the benefit of a third-party has been accepted or acted on by an entity (*i.e.*, Paradigm), it cannot be rescinded or modified by the original parties (*i.e.*, HSG and TRBP) without the third-party's consent." [115] Here, there is no dispute that Paradigm accepted the SCSA as

113. *Tawes*, 340 S.W.3d at 428; *see also Int'l Real Estate Holding Co., LLC v. For 1013 Regents, LLC*, No. 3:11–cv–02317, 2013 WL 1091243, at *5–6 (N.D.Tex. March 13, 2013) (citing to *Stine* and finding that lender was third-party beneficiary of contract that defendant executed with certain other third parties (the "TICs") where the defendant agreed to ensure that the TICs pay all taxes due under loan agreement [between the lender and the TICs] or to do so itself).

114. Plaintiffs' App. at 152, 176–177 (SCSA, ¶ 3. 1, Exhibit D).

115. *Houston Lighting & Power Co. v. Wheelabrator Coal Servs. Co.*, 788 S.W.2d 933, 937 (Tex.App.Houston [14th Dist.] 1990, no writ); *San Pedro State Bank v. Engle*, 643 S.W.2d 450, 456 (Tex.App.-San Antonio 1982, no writ) ("'[a]fter a third-party beneficiary contract has been accepted by the third-party beneficiary, it cannot be rescinded or modified without the subsequent consent of the third party beneficiary"); *Mercantile Nat'l Bank at Dallas v. McCullough Tool Co.*, 250 S.W.2d 870, 875 (Tex.Civ.App.-Austin 1952, no writ), *rev'd on other grounds*, 152 Tex. 471, 259 S.W.2d 724 (1953) ("It is a well-established rule of law that a contract entered into by parties for the benefit of a third party is binding and may be enforced by the third party ... [a]nd where the contract has been accepted by the third party beneficiary it may not be modified or rescinded without his consent"); *Pac. Am. Gasoline Co. of Texas v. Miller*, 76 S.W.2d 833, 845 (Tex.Civ.App.-Amarillo 1934, writ ref'd) (after a contract for the benefit of a third person has been accepted or acted on by him, it cannot be rescinded without his assent).

a matter of law. It participated in the revision of the agreement and then signed the Consent to the SCSA on May 23, 2010, signifying its acceptance of the SCSA. Paradigm subsequently relied on the SCSA and accepted its benefits by dealing directly with TRBP on payment issues and accepting TRBP's rental payments in June, July, and August, 2010, before the Amendment to the SCSA was signed without Paradigm's knowledge or consent on August 12, 2010.[116]

The court concludes that the Amendment to the SCSA was, without a doubt, a modification of TRBP's obligations under the SCSA *that required Paradigm's consent to be effective.* Specifically, section 1 of the Amendment to the SCSA provides that

> Notwithstanding anything in the Agreement [*i.e.*, SCSA] to the contrary, and in particular Section 3.2 and 5.1 thereof, (1) the Agreement [*i.e.*, SCSA] shall *terminate* following the last game … of the Texas Rangers' 2010 MLB baseball season … [117]

TRBP has argued that the Amendment to the SCSA *merely reduced the time at which the SCSA would expire by its own terms.*[118] In other words, TRBP argues that a *termination* was not accomplished but a mere *amendment.* This is really of no moment. The case law is clear that a mere modification of a contract requires the consent of a third-party beneficiary. At a minimum, the Amendment to the SCSA was intended to create a modification. The modification of the SCSA without Paradigm's (*i.e.*, the third party beneficiary's) knowledge or consent was a breach of the SCSA, and the Amendment to the

SCSA is not valid as a matter of law. And because the Amendment to the SCSA is not valid, TRBP has further breached its obligations under the SCSA by not making the required payments to Paradigm since the fall of 2010.

■■■ TRBP attempts to escape any liability under the SCSA (or side-step the "consent" problem it has with regard to the Amendment to the SCSA) by relying on Section 365 of the Bankruptcy Code and the procedures TRBP undertook to purportedly assume and assign the SCSA to Baseball Express, on the Effective Date of the Chapter 11 Plan. Specifically, Section 365 permits a debtor-in-possession, subject to court approval, to either reject or assume (or assume and assign) an executory contract.[119] And Section 365 of the Bankruptcy Code provides that "assignment by the debtor in possession to an entity of a contract or lease assumed under this section relieves the [debtor in possession] and the estate from any liability for any breach of such contract or lease occurring after such assignment."[120]

■■■ The SCSA was, without a doubt, an executory contract between TRBP and HSG (of which Paradigm was a third-party beneficiary). Here, Paradigm was entitled to notice of the debtor-in-possession's intentions with regard to the SCSA since it was a third-party beneficiary of the SCSA. Under the Bankruptcy Rules, notice must be given in a bankruptcy case to counterparties to the contract and to other parties in interest of a debtor-in-possession's contemplated decision to either reject or assume an executory contract.[121] Here, TRBP gave notice to parties-in-interest

---

116. Plaintiffs' App. at 99 (Ireland Dec. ¶ 11).

117. Plaintiffs' App. at 264 (Amendment, § 1).

118. With all due respect, this is "double-speak." This is like saying someone did not die but, rather, merely ceased to exist.

119. 11 U.S.C. § 365(a) & (f).

120. 11 U.S.C. § 365(k).

121. FED. R. BANKR.PRO. 6006(c).

(including Paradigm) that the SCSA was on the list of executory contracts to be assumed and assigned to the purchaser.[122] And while there was language given in such notice that all executory contracts would be subject to any amendments thereto (and while there was a July 2010 amendment to the *APA* stating that Baseball Express would not close on its acquisition of the Rangers unless the SCSA was amended to terminate after the 2010 season), the fact is that the Amendment to the SCSA was not executed until: (a) *after* the notice went out to parties in interest containing the list of executory contracts to be assumed and assigned by TRBP (which list included the SCSA); and (b) *after* the court's approval of the assumption and assignment of executory contracts (via the Confirmation Order). *There is no credible argument, based on the undisputed summary judgment evidence, that Paradigm received meaningful notice of the Amendment to the SCSA prior to the document's preparation and execution (and, in time to object, if Paradigm wanted to, prior to the bankruptcy court's approval of all assumptions and rejections as part of the Confirmation Order).* So there cannot be any implied "consent" by Paradigm to the Amendment to the SCSA through notice and failure by Paradigm to object (if that is what TRBP is suggesting). Section 365 provides no safety net to TRBP here. Not only did Paradigm not receive notice reasonably calculated to apprise Paradigm of what was happening, but any notice would have been disingenuous. The notices regarding executory contracts suggested that the SCSA was being assumed and assigned. But the Amendment to the SCSA essentially sought to accomplish a Section 365

rejection—since it contemplated modifying the SCSA agreement to expire in three months rather than seven years. This is tantamount to a rejection. Thus, TRBP cannot fall back on Section 365 to save it from liability to Paradigm.

In summary, not only has the court found the Amendment to the SCSA to be invalid and unenforceable (since done without the consent of the third-party beneficiary), but TRBP essentially circumvented proper procedures under section 365 of the Bankruptcy Code. TRBP's liability under the SCSA either: (a) rode through the bankruptcy proceeding unaffected and is binding on TRBP because the SCSA (without the Amendment) was never assumed and assigned to any party under the confirmed chapter 11 plan (nor rejected);[123] or (b) survived as a rejection damages claim, since TRBP effectively rejected the SCSA by its execution of the Amendment to the SCSA (which, under section 365(g)(1) of the Bankruptcy Code, would give Paradigm a prepetition claim for breach of the SCSA). Either way, Paradigm's claim for breach of the SCSA against TRBP survives and Paradigm is entitled to summary judgment on its claim for breach of the SCSA.

In conclusion, the court finds that the summary judgment evidence demonstrates that Paradigm was a third-party beneficiary of the SCSA and that TRBP has breached its obligations owing to Paradigm under the SCSA. Accordingly, as to Count 2 of the Amended Complaint, the court finds that Paradigm's MSJ should be granted and TRBP's MSJ should be denied.

---

**122.** Actually, there was a list of "Excluded Contracts" that would not be assumed and the SCSA was not on such list.

**123.** *Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust,* 208 F.3d 498, 504 n. 4 (5th Cir.2000), *cert. denied,* 531 U.S. 871, 121 S.Ct. 172, 148 L.Ed.2d 117 (2000).

## IV. THE MOTION TO DISMISS THE AVOIDANCE COMPLAINT

TRBP has separately filed a third-party complaint against HSG and counterclaim against Paradigm in order to avoid the SCSA as a fraudulent transfer pursuant to section 548(a)(1)(A) of the Bankruptcy Code (the "Avoidance Complaint"). Specifically, TRBP has requested, if this court does not hold the Amendment to SCSA to be valid and binding, that the court, in the alternative, *avoid* the SCSA as an "obligation ... incurred by the debtor ... within 2 years before the date of the filing of the petition" that was incurred "with actual intent to hinder, delay, or defraud" TRBP's lenders.[124] Because the court has denied TRBP's MSJ as to Count 2 of the Amended Complaint, finding that TRBP breached the SCSA and that the Amendment to SCSA is not binding on Paradigm, the court must now consider the Avoidance Complaint as well as Paradigm's and HSG's Motion to Dismiss the Avoidance Complaint.

Specifically, Paradigm and HSG have sought dismissal of the Avoidance Complaint under two separate grounds: (1) that TRBP lacks standing to bring the Avoidance Complaint because, as a matter of law, an avoidance action must *be for the benefit of creditors and not the debtor (and here, Paradigm argues, there can be no benefit to creditors since TRBP's creditors were paid in full under TRBP's Plan);* and (2) that TRBP has failed to allege the required elements of a fraudulent transfer claim under section 548(a)(1)(A) of the Bankruptcy Code, by failing to specifically allege how *TRBP* (as opposed to *HSG* ) intended to hinder, delay, or defraud its creditors.

## A. Does TRBP Have Standing to Bring the Avoidance Complaint?

Constitutional standing requires three elements: (1) the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical;' " (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court;" and (3) it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."[125] As mentioned above, Paradigm's and HSG's lack-of-standing argument is all premised on the argument that avoidance actions must be for the benefit of creditors, not the debtor or its equity holders, and, here, it is a matter of public record that all creditors of TRBP, including all unsecured creditors, were paid in full with interest on their claims in the underlying Bankruptcy Case. As such, Paradigm argues that no creditors stand to benefit from successful prosecution of the Avoidance Complaint and TRBP is not permitted to use the strong-arm equitable power of a bankruptcy avoidance action for the exclusive benefit of itself and its equity holders. Simply stated, Paradigm argues that, in the absence of any injured creditors, TRBP lacks standing to bring the Avoidance Complaint.

Here, it first should be reiterated that the only claim asserted by TRBP in the Avoidance Complaint is for *avoidance* of a fraudulent transfer *under section 548(a)(1)(A)* of the Bankruptcy Code and: (a) *not* a cause of action *under section 544*

---

**124.** See 11 U.S.C. § 548(a)(1)(A).

**125.** *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations omitted).

of the Bankruptcy Code to avoid a transfer of an "interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor that is holding an unsecured claim"; and (b) *not* a claim *under section 550(a)* of the Bankruptcy Code "to *recover,* for the benefit of the estate property transferred" to the Paradigm Parties.[126] To be clear, TRBP has brought a "standalone" Section 548 action. TRBP is simply seeking to avoid the obligation it incurred on the eve-of-bankruptcy by virtue of the SCSA. Notably, *it is Section 550* (not Section 548 or other Chapter 5 statutes) that mentions the requirement of a "benefit" to the "estate" if a trustee/debtor-in-possession seeks to *recover* property transferred (as opposed to seeking to *avoid* transfers or obligations). And notably, while Section 544(b) requires a pre-existing holder of an unsecured claim as a condition to bringing an avoidance action under state law, there is no such requirement in Section 548(a). Thus, this court must probe deeper into whether standing is defeated here if the creditors of TRBP (including unsecured creditors) have at this point been paid in full.

While the Fifth Circuit has specifically recognized the differences between bringing fraudulent transfer actions under section 544 of the Bankruptcy Code (which allows for a longer reach back period) and those pursued under section 548 of the Bankruptcy Code,[127] the Fifth Circuit has never expressly addressed the requisite standing to bring an avoidance action under section 548(a)(1) of the Bankruptcy Code. In fact, the Fifth Circuit authority that comes closest to the standing question presented here is *In re Mirant Corp.*[128] In that case, the issue was whether a debtor had standing to assert an avoidance action that had been brought under Section 544 and the debtor was also seeking recovery of funds, pursuant to Section 550 of the Bankruptcy Code. In *Mirant Corp.,* the debtor had guaranteed certain obligations of its affiliate, and after its affiliate defaulted, the debtor was forced to make payments on the guaranty.[129] The debtor later filed for bankruptcy and initiated an adversary proceeding against the lenders, *again, pursuant to both sections 544 and 550 of the Bankruptcy Code.*[130] After the debtor confirmed a plan that paid general unsecured creditors in full (albeit with primarily the receipt of shares in the reorganized debtor), the lenders filed a motion to dismiss for lack of standing.[131] On appeal, the Fifth Circuit first noted that other federal courts were divided on the issue of whether parties in the position of this debtor had standing to pursue avoidance actions where the debtor's creditors had been paid in full.[132] Specifically, the Second Circuit has held that the debtor did not have standing under section 544 to assert an avoidance action where creditors had been paid in full and would receive no benefit from avoiding the transfer, whereas the Eighth and Ninth Circuits have held that a debtor's standing to pursue an avoidance action was not defeated simply because creditors had been paid in full.[133]

---

126. 11 U.S.C. §§ 544(b)(1), 550(a).

127. *In re Moore,* 608 F.3d 253, 260 (5th Cir. 2010).

128. 675 F.3d 530 (5th Cir.2012).

129. *Id.* at 532.

130. *Id.*

131. *Id.*

132. *Id.* at 533.

133. *Id.* at 533–34 (comparing *Adelphia Recovery Trust v. Bank of America, N.A.,* 390 B.R. 80 (S.D.N.Y.2008), *aff'd,* 379 Fed.Appx. 10 (2d Cir.2010) (adopting reasoning of Southern District of New York), with *Stalnaker v. DLC, Ltd. (In re DLC, Ltd.),* 295 B.R. 593 (8th Cir. BAP 2003), *aff'd,* 376 F.3d 819 (8th Cir. 2004)), and *Acequia, Inc. v. Clinton (In re Acequia, Inc.),* 34 F.3d 800 (9th Cir.1994).

The Fifth Circuit ultimately sided with the Eighth and Ninth Circuits, first, noting that under the law of the Fifth Circuit, the right to avoid a transfer or obligation under § 544 *is assessed as of the petition date.*[134] As a result, the Fifth Circuit held that "[o]nce a trustee's avoidance rights are triggered at the time of filing, they persist until avoidance will no longer benefit the estate under § 550."[135] Specifically, the Fifth Circuit held that the debtor may have standing to pursue avoidance actions, even though creditors have subsequently been paid in full, although this standing will hinge on whether the avoidance and recovery would actually benefit the estate, noting that:

> A bankruptcy trustee may still have standing to avoid a fraudulent transfer after the unsecured creditors are satisfied in full. The fraudulent transfer injures the estate and § 550 ensures that the injury is redressed because a trustee may only avoid a transfer to the extent it **benefits the estate.** Therefore, to the extent that MCAR's [the debtor] successful avoidance of fraudulent transfers will benefit the bankruptcy estate, MCAR [the debtor] has Article III standing to avoid transfers that **injure the estate.**[136]

Without a doubt, the Fifth Circuit appeared to recognize a distinction between a "benefit to the estate" and the concept of a pool of assets to be gathered for the sole benefit of unsecured creditors.[137] However, it cannot be ignored that Section 550 was implicated in *Mirant*—which is the statute that refers to the notion of "benefit" to the "estate." As noted above, this case is distinguishable from the facts of *Mirant* because the Avoidance Complaint is being brought under section 548(a)(1)(A) of the Bankruptcy Code alone, not sections 544 or 550 of the Bankruptcy Code. The court believes this to be an important distinction.

■ Specifically, the court finds that the inquiries relevant to a fraudulent transfer action under section 548(a)(1) (*i.e.,* whether a particular obligation incurred by the debtor is subject to *avoidance*) are materially different than the inquiries related to *recovery* under section 550(a) (*i.e.* whether the recovery of specific fraudulently transferred property will result in a benefit to the bankruptcy estate). A number of federal courts that have addressed the specific issue of whether avoidance of a transfer/obligation (as opposed to affirmative recovery on a transfer/obligation) requires a showing that avoidance must demonstrably benefit the estate have found that it does not.[138] In any event, even if benefit to the estate is on some level required in a Section 548 standalone action

---

**134.** *Mirant,* 675 F.3d at 534 (citing *In re Moore,* 608 F.3d 253, 260 (5th Cir.2010)).

**135.** *Mirant,* 675 F.3d at 534.

**136.** *Id.* (emphasis added).

**137.** *Id.; see also Stalnaker,* 376 F.3d at 823.

**138.** *See, e.g., In re Coleman,* 426 F.3d 719, 725–27 (4th Cir.2005) (rejecting defendant's contention that "like property recovery, transfer avoidance could be limited to the extent necessary to benefit the creditors and pay the administrative expenses of the estate"); *Dunes Hotel Assocs. v. Hyatt Corp.,* 245 B.R. 492, 503–511 (D.S.C.2000) (declining to adopt a per se rule that every avoidance action must demonstrably benefit the estate or must lead to the recovery of property transferred, but ultimately finding that in specific circumstances of the case, avoidance would not be permitted); *Brennan v. Slone (In re Fisher),* Nos. 07–3319, 07–3320, 2008 WL 4569946, at *8 (6th Cir. Oct. 10, 2008) ("[a]voidance and recovery are distinct [remedies], with the former a necessary precondition for the latter"); *Brown v. Phillips (In re Phillips),* 379 B.R. 765, 780 (Bankr.N.D.Ill.2007); *Savage & Assocs., P.C. v. BLR Servs. SAS (In re Teligent, Inc.),* 307 B.R. 744, 747–49 (Bankr.S.D.N.Y. 2004).

(for example, required on some equitable level)—in spite of there being no requirement in the wording of Section 548(a)—the court is not convinced there is no plausible benefit to the estate here. As described above, *Mirant* makes clear that "benefit to the estate" does not hinge on whether a Chapter 5 action will result in a pool of assets being garnered for the benefit of unsecured creditors. Here, it is a matter of public record that the equity holders of TRBP have obligations to certain lenders that TRBP was also liable to (and while those lenders may have been paid in full on the "capped liability" on which TRBP was obligated, such lenders were not paid in full on their entire indebtedness owed by the direct and indirect equity owners of TRBP). Thus, to the extent the equities matter here, it would seem that such equities weigh in favor of finding there to be a plausible "benefit to the estate" argument articulated by TRBP.[139] Accordingly, the court finds that here, TRBP does have Constitutional standing to assert a fraudulent transfer claim under section 548(a)(1)(A) of the Bankruptcy Code, even though unsecured creditors were paid in full under the Plan, and that the Avoidance Complaint should not be dismissed.

## B. Has TRBP Alleged All the Required Elements for a Fraudulent Transfer Claim?

Section 548(a)(1) of the Bankruptcy Code provides for the avoidance of "any transfer . . . of any interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred . . . within two years before the date of the filing" of the bankruptcy petition, if the transfer was made with "actual intent to hinder, delay, or defraud."[140] Thus, section 548(a)(1)(A) requires TRBP to plead and prove: (1) a transfer, (2) of an interest of the debtor in property or any obligation incurred by the debtor, (3) made or incurred within two years of the filing of the petition, that was (4) either voluntary or involuntary, and (5) the transfer was made with the actual intent to hinder delay or defraud a creditor.[141] Here, TRBP's Counterclaim alleges, in relevant part:

**139.** Without a doubt, Paradigm has eloquently argued that it would be disingenuous and against the underlying purposes of the Bankruptcy Code to allow TRBP to prosecute the Avoidance Complaint where recovery would be solely for the benefit of the reorganized debtor. However, in addition to the points made above (concerning the lenders of TRBP who still hold outstanding obligations owed by direct or indirect equity owners of TRBP), the court cannot help but point out the unique and somewhat troubling circumstances of this case—specifically, that it is a Hicks'-owned entity that *actually owned* the Aircraft (*i.e.*, specifically, Tom Hicks is an indirect owner of SW SportsJet, LLC the owner of the Aircraft and counter-party to the Paradigm–SW SportsJet Lease with Paradigm)—and it was also a Hicks'-owned entity *that was a sublessee* on the Aircraft and that ultimately entered into the SCSA, making TRBP liable on the Paradigm lease, on the eve of bankruptcy. While the facts remain to be developed at a trial, it certainly does not seem disingenuous or contrary to the underlying purposes of the Bankruptcy Code to allow the Plaintiff his day in court regarding the bona fides of this eve-of-bankruptcy transaction between TRBP and the Hicks-entity/insider, when the transaction had the consequence of making TRBP liable for several millions of indebtedness of a Hicks-entity/insider. After all, avoidance actions have historically been aimed at (among other things) deterring overreaching by insiders of a debtor.

**140.** 11 U.S.C. § 548(a)(1)(A).

**141.** 11 U.S.C. § 548(a)(1)(A) (emphasis added); *U.S. Bank, NA v. Verizon Commc'ns, Inc.*, 817 F.Supp.2d. 934, 940 (N.D.Tex.2011) (noting that "[t]o state a claim for actual fraudulent transfer under the [Texas Business & Commerce Code] and the Bankruptcy Code, a creditor must allege that a debtor made a transfer 'with actual intent to hinder, delay, or defraud' any creditor of the debtor.").

On the date of the execution of the Shared Charter Services Agreement, TRBP, as a guarantor of Obligations under the Credit Agreements, was indebted to the Lenders in the amount of at least $75 million.

TRBP entered into the Shared Charter Services Agreement with HSG for the purpose of, among other things, hindering and delaying the Lenders. In particular, because the Lenders had refused to approve the sale to Baseball Express as originally structured, TRBP and HSG sought to frustrate the Lenders' approval rights under the Credit Agreements by orchestrating the "eve of bankruptcy" transactions, including the Shared Charter Services Agreement, and by then seeking to consummate the sale through TRBP's Bankruptcy Case without the approval of the Lenders based upon the payment limitation benefits of TRBP's Guaranty Cap. Moreover, TRBP's execution of the Shared Charter Services Agreement was wholly unnecessary to the Baseball Express sale. HSG could have just as easily, and more appropriately, directly entered into the Shared Charter Services Agreement with Baseball Express without any involvement by TRBP. By entering into the Shared Charter Services Agreement instead, TRBP and HSG sought to effectively elevate the payment priority of HSG's obligations under the Paradigm–HSG Charter Agreement over the payment priority that the Lenders have in the absence of such agreement by virtue of their liens under the Security Agreements. Finally, as a result of TRBP's entry into the Shared Charter Services Agreement, TRBP has been embroiled in litigation that would have been wholly-unnecessary in the absence of such agreement, and such litigation has further hindered and delayed the Lenders' collection efforts.

Additionally, by entering into the Shared Charter Services Agreement, at a time when both TRBP and HSG were under the control of Hicks, TRBP and HSG intended to defraud the Lenders. Such indicia of fraud includes, without limitation:

- The fact that the obligations incurred by TRBP were for the benefit of HSG and Hicks, both insiders of TRBP at the time of the transaction;

- The fact that TRBP and HSG shared the same officers at the time of the execution of the Shared Charter Services Agreement, and no arms-length negotiations (if any negotiations at all) took place between TRBP and HSG with respect to the terms of the Shared Charter Services Agreement;

- The fact that the terms of Paradigm–HSG Charter Agreement were above market and, notwithstanding same and the fact that Baseball Express was agreeable to the assumption of a short-term sublease between HSG and TRBP, the above-market terms for the full term of the Paradigm–HSG Charter Agreement were effectively passed along to TRBP under the terms of the Shared Charter Services Agreement;

- The fact that the prior agreement between HSG and TRBP for TRBP's access to air charter services, to the extent contemplated as a multi-year agreement, was unenforceable as a matter of law, and it was unnecessary for TRBP to enter into a direct agreement with HSG in connection with the Baseball Express sale (inasmuch as HSG could have contracted directly with Baseball Express);

- The fact that HSG was insolvent at the time of the transaction and, having control of TRBP as its indirect parent and by virtue of overlapping officers, including Hicks, had the incentive to limit its liabilities by effectively imposing its

long-term above-market obligations on TRBP so that such obligations would be satisfied through the Baseball Express sale or, alternatively, from proceeds of the sale;

● The fact that the transaction took place on the eve of TRBP's bankruptcy filing, after the Lenders had accelerated the indebtedness owed under the Credit Agreements, and after HSG had failed to obtain the requisite level of Lender approval to enable consummation of the previously-structured sale (which did not include the Shared Charter Services Agreement); and

● The fact that Hicks stood to indirectly benefit from the transaction as a direct or indirect owner of SW SportsJet, the owner of the Aircraft and counterparty to the Paradigm–SW SportsJet Lease with Paradigm.[142]

In the Motion to Dismiss, Paradigm and HSG have alleged that TRBP's Avoidance Complaint fails to adequately allege the fifth requirement of a fraudulent transfer under section 548(a)(1)(A) of the Bankruptcy Code that "the transfer was made with the actual intent to hinder, delay, or defraud a creditor." Specifically, Paradigm and HSG have argued that TRBP fails to plead that TRBP—*as distinct from HSG*—acted with "actual intent to "hinder, delay or defraud" TRBP's creditors. The court disagrees and determines that enough facts have been pleaded (including but not limited to shared officers between TRBP and HSG, control by Mr.

Hicks of TRBP, failure of TRBP to have lender support of its contemplated sale to Baseball Express as of the date of the SCSA) to make a plausible claim of the requisite intent on the part of TRBP.

In evaluating a Motion to Dismiss under Rule 12(b)(6), which is made applicable in this proceeding pursuant to Bankruptcy Rule 7012, a complaint is to be charitably construed, with all well pleaded factual allegations being accepted as true and with any reasonable inferences from those facts being drawn in favor of the non-moving party, TRBP.[143] Moreover, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." [144] In 2009, the Supreme Court clarified the *Twombly* pleading standard and elaborated that, to survive a motion to dismiss, a civil complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [145] In ruling on a Rule 12(b)(6) Motion, the material to which the Court may refer is limited, and the Court should not look beyond the pleadings.[146] The pleadings include the complaint and any documents attached to it.[147]

In addition to moving for dismissal under Rule 12(b)(6), Paradigm and HSG have argued that because fraud is alleged, the heightened pleading standard of Rule 9(b) applies to the Avoidance Complaint. Specifically, Rule 9(b), made applicable by Bankruptcy Rule 7009, states that "[i]n

---

**142.** Avoidance Complaint at 14–16, ¶¶ 41–42.

**143.** *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–556 & 569, n. 14, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

**144.** *Id.* at 555–556, 127 S.Ct. 1955.

**145.** *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949–1951, 173 L.Ed.2d 868 (2009) (the Court also affirmed the *Twombly* two-pronged approach to deciding motions to dis-

miss: first, determine what is a factual allegation versus a legal conclusion, as only factual allegations will be accepted as true; and second, determine whether the factual allegations state a plausible claim for relief).

**146.** *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999).

**147.** *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000).

alleging fraud ..., a party must state with particularity the circumstances constituting fraud...." Fed.R.Civ.P. 9(b). Thus, a party alleging fraud must specify "the who, what, when, where, and how" of the alleged fraud.[148] While, the Fifth Circuit has yet to address whether the heightened pleading standard of Rule 9(b) applies to claims for fraudulent transfers,[149] the court need not decide such issue, as TRBP (as explained in detail below) has plead its claim with sufficient particularity even to satisfy Rule 9(b)'s more stringent standard.

▮ Here, the court finds that the acts alleged by TRBP in the Avoidance Complaint unquestionably provide notice to both Paradigm and HSG of the specific facts and circumstances surrounding this eve of bankruptcy transaction, including the who, what, when, and where of the alleged fraud. However, even if the Avoidance Claim did not properly allege such facts, TRBP has, nonetheless, pleaded the fraudulent intent required under section 548(a)(1)(A) of the Bankruptcy Code by pleading certain indicia of fraud. Specifically, a plaintiff may establish the fraudulent intent required under section 548(a)(1)(A) by pleading so-called "badges of fraud" as circumstantial evidence of fraudulent intent which include: (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.[150] While no particular "badge" is dispositive, courts typically require the confluence of multiple badges to establish fraudulent intent.[151] Here, the court finds that TRBP has adequately pleaded at least three of the contemplated "badges of fraud" including that: (1) the obligations incurred by TRBP were for the benefit of an insider (here, HSG); (2) the value of the consideration received was not reasonably equivalent to the value of the amount of the obligation incurred as the terms of the 2007 Charter Agreement were above-market; and (3) the obligation was incurred on the eve of TRBP's bankruptcy after several of HSG's lenders had accelerated the indebtedness owing under certain of HSG's credit agreements (of which TRBP was a guarantor). The court finds that the presence of these badges of fraud is enough to establish the requisite "fraudulent intent" to meet the pleading requirements of both Rule 9(b) and Rule 12(b)(6). Accordingly, TRBP has properly plead all the required elements of section 548(a)(1)(A) of the Bankruptcy Code, and the court finds that the Motion to Dismiss should be denied.

## V. CONCLUSION

For the reasons articulated above, the court is: (1) denying Paradigm's MSJ and

---

**148.** *Benchmark Electronics, Inc. v. J.M. Huber Corporation,* 343 F.3d 719, 724 (5th Cir.2003).

**149.** *Janvey v. Alguire,* 647 F.3d 585, 599 (5th Cir.2011) ("We need not and do not address the issue of whether heightened pleading is required.").

**150.** *Soza v. Hill (In re Soza),* 542 F.3d 1060, 1067 (5th Cir.2008).

**151.** *In re Equipment Acq. Resources, Inc.,* 481 B.R. 422, 431 (Bankr.N.D.Ill.2012) ("A single badge of fraud is insufficient to establish intent, but the presence of several may create a presumption that the debts acted with the requisite intent to defraud.").

granting TRBP's MSJ as to Count 1; (2) granting Paradigm's MSJ and denying TRBP's MSJ as to Count 2; and (3) Denying the Motion to Dismiss as to the Avoidance Complaint. Further proceedings will be necessary to determine at least: (a) the potential amount of the allowable claim of Paradigm for TRBP's breach of the SCSA; (b) whether the SCSA should in fact be avoided as a fraudulent transfer so that perhaps Paradigm will have no claim in the TRBP bankruptcy case; and (c) other potential relief.

Counsel shall upload Summary Judgments consistent with the ruling above.

**IT IS SO ORDERED.**